**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TIMOTHY PFEIFFER, | : | |
| | : | |
| Plaintiff, | : | Civil No. 12-1335 (AET) |
| | : | |
| v. | : | |
| | : | |
| WARDEN THEODORE HUTLER, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    TIMOTHY PFEIFFER, Plaintiff pro se
    18 Queen Ann Road
    Brick, New Jersey 08723

**THOMPSON**, District Judge

    Plaintiff, Timothy Pfeiffer, a state inmate confined at the Ocean County Jail in Toms River, New Jersey, at the time he filed this Complaint, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I. BACKGROUND

Plaintiff, Timothy Pfeiffer ("Pfeiffer" or "Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Warden Theodore Hutler at the Ocean County Jail ("OCJ"); Chief Mueller at OCJ; Officer DeMarco at OCJ; Officer Brown at OCJ; and Lieutenant Kenny Martin at OCJ. (Complaint, Caption, ¶¶ 4b-g). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Plaintiff alleges that, on or about September 9, 2010, defendant Officer DeMarco disclosed Plaintiff's criminal charges to the nursing staff at OCJ for no reason other than to defame Plaintiff and cause him harm. At or about the same time, other unknown correctional officers at OCJ "maliciously" disclosed Plaintiff's criminal charges to other inmates on his dorm unit for the purpose of causing Plaintiff harm, and called Plaintiff derogatory names and other verbal abuse because of Plaintiff's criminal charges. On or about September 27, 2010, defendant Officer Brown also disclosed Plaintiff's criminal charges to other inmates in the dorm units for the purpose of causing

Plaintiff harm. In particular, Officer Brown paid another inmate in extra food trays to assault Plaintiff. Plaintiff alleges that he was assaulted by the inmate and incurred serious injuries requiring medical attention, namely, bruised ribs and lacerations to his face and body. (Compl., ¶ 6).

Plaintiff further alleges that defendant Lt. Martin, a classification/housing officer at OCJ, purposely placed Plaintiff in a hostile dorm unit because of Plaintiff's criminal charges so as to expose Plaintiff to serious harm. (Compl., ¶ 4f).

Plaintiff alleges that Warden Hutler and Chief Mueller are responsible for the policies and customs at OCJ and the conduct of the correctional officers under their charge. Plaintiff contends that Warden Hutler and Chief Mueller were fully aware of the wrongful actions of the defendant officers in disclosing the sexual orientation and sex crime charges of certain inmates, such as Plaintiff, for the purpose of causing these particular inmates harm. Plaintiff alleges that, despite this knowledge, Warden Hutler and Chief Mueller failed to take corrective action or appropriate measures to stop the defendant officers from causing such harm. (Compl., ¶¶ 4b, 4c and 6).

Plaintiff seeks compensatory and punitive damages in excess of $5,000.00 and an injunction against defendants compelling them

to cease causing harm to Plaintiff.[1] (Compl., ¶ 7). Because Plaintiff has since been released from Ocean County Jail, (see Docket entry no. 3), his request and motion for injunctive relief is rendered moot and will be dismissed accordingly.

      II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)

---

[1] Plaintiff filed a motion for injunctive relief asking that Warden Hutler and Chief Mueller reprimand and discipline Officer Brown, and to have Officer Brown cease from paying inmates to assault Plaintiff because of his sex crime charges. (Docket entry no. 2).

(following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)(citing Iqbal, 556 U.S. at 676). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See id. at 678-79; see also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp. v.. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief.

5

A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

### III. SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). See also Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

### III. ANALYSIS

A. Harassment Claim

Because it appears that Plaintiff was confined as a pretrial detainee at the time of the alleged conduct, the Court will examine Plaintiff's allegations under the test applicable to the

Fourteenth Amendment Due Process Clause claims.  Generally, "the Due Process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."  <u>Reynolds v. Wagner</u>, 128 F.3d 166, 173 (3d Cir. 1997)(citation omitted); <u>see also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 544 (1979); <u>City of Revere v. Massachusetts</u>, 463 U.S. 239, 244 (1983); <u>accord</u> <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 581 (3d Cir. 2003)(citations omitted).  The Eighth Amendment sets forth the floor for the standard applicable to the claims of such litigants.  <u>See</u> <u>Bell</u>, 441 U.S. at 544.  Thus, a failure of prison officials to provide minimally civil conditions of confinement to such individuals violates their right not to be punished without due process of law.  <u>See</u> <u>Reynolds</u>, 128 F.3d at 173-74.

   Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner. <u>See</u> <u>Jean-Laurent v. Wilkerson</u>, 438 F. Supp.2d 318, 324-25 (S.D.N.Y. 2006)(pretrial detainee's claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); <u>Ramirez v. Holmes</u>, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under § 1983).  <u>See also</u> <u>Price v.</u>

Lighthart, 2010 WL 1741385 (W.D. Mich. Apr. 28, 2010); Glenn v. Hayman, 2007 WL 894213, *10 (D.N.J. Mar. 21, 2007); Stepney v. Gilliard, 2005 WL 3338370 (D.N.J. Dec. 8, 2005)("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone ... no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp.2d 241, 244 (D.Me. 2005)).  See also Moore v. Morris, 116 Fed. Appx. 203, 205 (10th Cir. 2004)(mere verbal harassment does not give rise to a constitutional violation, even if it is inexcusable and offensive, it does not establish liability under section 1983), cert. denied, 544 U.S. 925 (2005); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 WL 1532496 (E.D. Pa. June 29, 2005)("It is well established ... that ... verbal harassment, ... standing alone, do[es] not state a constitutional claim")(citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999);

8

Maclean v. Secor, 876 F. Supp. 695, 698 (E.D.Pa. 1995)).  See also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)(holding that verbal harassment and abuse are not recoverable under § 1983); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987)(holding that racially derogatory remarks, although "unprofessional and inexcusable," are not "a deprivation of liberty within the meaning of the due process clause").

 Here, with respect to the unnamed correctional officers, Officer DeMarco and Lt. Martin, Plaintiff alleges that these defendants verbally abused Plaintiff and disclosed his sex crime charges to other inmates at OCJ.  However, Plaintiff does not allege an accompanying violation that might allow the disclosure of Plaintiff's sex crime charges to state a separate due process violation, other than that it generally or potentially exposed Plaintiff to potential physical harm.  These general allegations of potential injury are nothing more than the mere recitation of a legal conclusion without factual allegations sufficient at this time to support a claim that the defendants were verbally harassing plaintiff as an intended form of punishment. Consequently, because the alleged verbal harassment of Plaintiff was not accompanied by any injurious actions - or physical actions of any kind - by the correction officials, Plaintiff fails to state a cognizable § 1983 claim for a violation of his Fourteenth Amendment due process rights, and his claim will be

dismissed without prejudice as against the unnamed correctional officers, Officer DeMarco and Lt. Martin accordingly.

The alleged verbal harassment by defendant Officer Brown, however, would appear to be actionable based on Plaintiff's allegations of resulting physical harm.  Namely, Plaintiff alleges that Brown told other inmates of Plaintiff's sex crime charges and in particular, paid another inmate with extra food trays to physically assault Plaintiff, which said inmate did.  Based on these allegations, if true, this Court will allow this claim to proceed against defendant Officer Brown at this time.[2]

B. <u>Supervisor Liability</u>

Finally, it would appear from the allegations in the amended Complaint that Plaintiff's claims against defendants, Warden

---

[2] Plaintiff's allegations against Officer Brown also may be construed as asserting a failure to protect claim.  Correctional officers and prison officials have a duty "to take reasonable measures to protect prisoners from violence at the hands of other prisoners."  <u>Hamilton v. Leavy</u>, 117 F.3d 742, 746 (3d Cir. 1997)(citations and internal quotations omitted); <u>see</u> <u>also</u> <u>Burton v. Kindle</u>, 401 Fed. Appx. 635, 637-38 (3d Cir. 2010)(the same deliberate indifference standard applies to failure to protect claims under either the Eighth Amendment or Fourteenth Amendment).  For a failure to protect claim, Plaintiff must provide evidence establishing that: (a) "the conditions in which he was detained entailed a sufficiently serious risk of harm," (b) the defendants acted with "deliberate indifference" to Plaintiff's health and safety; and (c) causation, <u>i.e.</u>, a showing that Plaintiff was harmed or was in imminent danger of harm as a result of deliberate indifference.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Hamilton</u>, 117 F.3d at 746.  Here, the factual allegations set forth in the Complaint, if true, may be sufficient to state a cognizable failure to protect claim against defendant Officer Brown at this time.

Hutler and Chief Mueller, are based on supervisor liability alone.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties"). In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to Bivens[3] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948. Thus, each government official is liable only for his or her own conduct. The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. Id., 129 S.Ct. at 1949.

---

[3]   Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted). "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Id. at 130.

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test. See Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Hence, it appears that,

under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right. Williams v. Lackawanna County Prison, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, Plaintiff provides no facts describing how the supervisory defendants, Warden Hutler and Chief Mueller, actively or affirmatively violated his constitutional rights, i.e., he fails to allege facts to show that these defendants expressly directed the deprivation of his constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation. In short, Plaintiff has alleged no facts to

13

support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they failed to supervise, oversee or correct the alleged custom by some correction officers at OCJ to verbally abuse and disclose gay inmates or inmates confined on sex crime charges in violation of Plaintiff's constitutional rights.  These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will dismiss without prejudice the Complaint, in its entirety, as against the defendants, Warden Hutler and Chief Mueller, because it is based on a claim of supervisor liability, which is not cognizable in this § 1983 action, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) .

Nevertheless, if Plaintiff believes that he can assert facts to show more than supervisor liability, or if he can assert facts to cure the deficiencies of his claims against the other unnamed correction officers, Officer DeMarco and Lt. Martin, then he may move to file an amended complaint accordingly.[4]

---

[4]  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and

IV.   CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety as against defendants, Warden Hutler, Chief Mueller, Officer DeMarco, Lt. Martin, and the unnamed correctional officers at OCJ, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(B)(1), for failure to state a cognizable claim at this time.  Plaintiff may seek leave to amend his Complaint to cure the deficiencies in his claims against these defendants.  Further, the Complaint will be allowed to proceed at this time against defendant Officer Brown.  Finally, Plaintiff's request for injunctive relief (Docket entry no. 2) will be dismissed as moot since Plaintiff is no longer confined at OCJ.  An appropriate order follows.

/s/Anne E. Thompson
ANNE E. THOMPSON
United States District Judge

Dated: October 1, 2012

---

explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.